The next case is Gregory Gaffney v. the Secretary of the Florida Department of Corrections. Christopher DeRocher is here for the appellant Gaffney. Richard A. Pallas is here for the Secretary. And Mr. DeRocher, you may begin your argument when you are ready. Good morning, members of the court. My name is Christopher DeRocher, and I have the pleasure of representing Mr. Gregory Gaffney today. I'd like to start by answering the special question that was posed to both of us. And to answer that question, we have to take into context the statements that were made and why they were made. We have a 3850 court. This is the macro analysis of why they were made. We have a 3850 court who is writing to the 5th DCA explaining why this 3850 court is going to summarily deny this request by Mr. Gaffney without an evidentiary hearing. Now we've got a micro context. The micro context is we have the 3850 court writing about why Mr. Gaffney's claim that he was wronged under Strickland, because this wasn't admitted as a prior inconsistent statement, is meritorious of summary denial without an evidentiary hearing. So with that in context, let's take a look at the two statements, because the very first statement, when you look at what Mr. Gaffney's other argument was, that nobody has addressed until this court addressed it in its COA, is impeachment by bias and motivation to lie. Let me just ask you this question to get to the heart of the matter. Yes, Your Honor. Let's assume de novo review without applying epideference. The purpose for cross-examining would be to impeach Ms. Raymond's credibility or to show bias on her part. Even if her credibility was impeached and even if she was biased, you still have the jury left with a lot of graphic and unimpeached description of the crime, including the testimony by the young victim. She said that Gaffney came to the house at night while she was in bed, touched her on two occasions. She described the episodes in detail. She saw his face. After an interview by authorities, he came to the house to tell her he did not molest her and he would buy her some clothes. And so that's pretty—I'm having a hard time figuring out how you're going to get around the prejudice prong of Strickland v. Washington, based on all that testimony, even if Raymond was impeached with the email. There's one sentence that the complaining witness actually stated on the stand. I only lie when people want me to lie. And consider that in the context of the two emails, especially the second email. But you've got all the other evidence. You've got all that other evidence in the case, even if she's impeached. I'm agreeing with you. Her credibility could be impeached. Her bias could be demonstrated. But given all that other evidence, how are you going to get around it? Prejudice. All the other evidence was basically the testimony of the complaining witness, who's the daughter of A.R., and who's to say? Counsel, I heard Judge Wilson's recitation. I have a similar question, but that's not true that it's just the complaining witness. The brother corroborated it and went unimpeached. And Witness B, even though there was a JOA on the counts regarding her, her testimony could be used as evidence and support under Florida law to establish that what happened to Victim K happened. So you have that as well. You also have evidence that your client, and this is undisputed because it's in your client's statement, went to these girls after the accusations were there and told them, hey, I'm going to give you some gifts if you say this didn't happen. That's all in evidence. Am I wrong? Am I wrong? You are correct. Thank you. With all of that evidence, so I'll go back to the question that both Judge Lagoa and Judge Wilson asked, with all that evidence, even if we do a de novo review, how can we say that there's a reasonable probability of a different result just because a collateral witness was impeached by bias? Think about the context. Don't think for a minute I wouldn't lie on you to keep my children. How about expand that? Don't think for a minute my family wouldn't lie on you to keep the family. But that's not the statement. We can't just assume that. That's not the statement. And that wouldn't be used for impeachment. But that is what you can then use in combination with the complaining witness's own statement, I only lie when other people want me to lie. You can then build a defense that this family cooked up this statement, and they cooked up all these other things together to keep the family together. Because, obviously, if all of this were true, Ms. A.R. has got a huge failure to protect problem. She's got a huge dependency issue. That would be true if her son was the perpetrator. In other words, her child was molested by somebody in her home. She's got a DCF problem no matter what. Oh, yes. And what better way to diffract all that, especially if she... That's not diffracting it. That's saying she's accusing her son of doing it. That's not diffracting. Listen, no one is disputing that Kay was molested here. There is a victim of a horrible crime. It seemed to me that you were alleging something otherwise. I would say it was either one of two things that happened. Either something really happened, the brother did it, and the whole family covered it up by laying it on my guy, or this never happened. I mean, that was my understanding of what your argument is, is that you're alleging that nothing happened. I'd like to go back to the actual question that was posed. Yes. You didn't really answer the question. I'm sorry. Can you answer the question, please? Sure, certainly. This is the ruling by the court, by the state court. Right. Okay. Defendant has failed to prove prejudice for counselor's failure to use these emails when cross-examining Raymond. The substance of the emails would not have been admissible as extrinsic evidence if she denied making the statements. The emails are not part of a business record certified by Yahoo.com. Therefore, if Raymond denied sending the emails, there is no evidence that the emails could be authenticated in order to introduce them into evidence to prove these statements were made. How is that not a ruling and a determination of factual finding made by the state court? Okay. Excellent question. Remember, our argument is impeachment by bias and motivation to lie. So the first item, because all this was about prior and consistent statement, under Florida law, you can bring in extrinsic evidence of bias and motivation to lie. But this is the problem, and this goes to what Judge Legault was asking you, which is we're not here to re-litigate Florida law. It may be that the state habeas court here completely botched Florida law, but you have a ruling by a state habeas court and an affirmance by— I understand. —an affirmance by the Fifth District Court of Appeal. We have to take that as a given of a determination of state law. And what the tell for me is is when you have briefs that are arguing about the propriety of state law or not, that's when we know that that's not for us to do. Certainly the ineffective assistance is for us, but once there's a determination of state law that says that this could not have come in, we don't question or go behind that, do we? I understand. I'm asking, do we go behind that? Not often. When do we ever? Tell me. Give me a case. In situations where it's fundamentally erroneous. Of state law? We have gone on and said a state court's determination of state law is something we go behind and decide on our own? Let's assume for a moment that we don't do that, okay? This would have been a determination about using it as a prior and consistent statement, not as for impeachment by bias and motivation to lie. Judge Legoa just read you the thing. It wasn't limited to one particular purpose. It was limited. It said it wouldn't come in. Well, it was limited because the 3850 court never addressed the impeachment by bias and motivation to lie. The whole context of this was admission as a prior and consistent statement. And so their rulings were Let me finish the rest of it then. Sure. Finally, this court would note that when asked by the trial court, defendant expressed that there was no evidence that existed he wanted to present in his defense. Can you also talk about that? I mean, they knew about this, and your client said, I don't have any other evidence to present. Okay. And this is, okay. This would have been at the, I believe, at the district court level. And essentially, what we're dealing with is the 3850 court is doing a summary denial. And when 3850 litigants are doing their initial petition, they're not required, this is not equity pleading, they're not required to prove up and try their case in their 3850 pleading. They're only required to put up sufficient facts so that the state can't conclusively rebut what they're alleging. Then they're entitled to an evidentiary hearing. He never got his evidentiary hearing. This was all conclusive denials. And it was conclusive denials based on prior and consistent statement. The 3850 court never addressed the whole issue of, and Mr. Gaffney brought it up in his 3850 motion, about bias and motivation to lie. Counsel, let me ask you this. This goes back to the prejudice inquiry. So when we deal with prejudice, Strickland prejudice, what we say is we consider the evidence that should have come in with all the other evidence, plus any negative evidence that would have come in with what was excluded. So in other words, we put it all together for how it would have looked if all this came in. Let me ask you about your client's e-mail address. What's your client's e-mail address? I do not have it memorized, I'm sorry. You know it's, what do you think it is? I'm not asking you to give me word for word. Like I said, I do not have that memorized, I'm sorry. It's not savory, is it? I don't recall it, I'm sorry. I do happen to have it. It's gmanontopofyouatyahoo.com. In a sex battery case, do you think maybe putting in an e-mail that has that as the e-mail address would have helped your client or would have hurt your client? I think it's the context. I'm asking you a question. You're an experienced attorney. Would that have helped your client or would that have hurt your client? Somehow we would have had to explain that government man is on top of the case instead of a sexual reference. Is your client a member of the federal or state government? Who knows? It would be up to him to explain it. Counsel, you're an officer of the court, so don't be glib, okay? It's not appropriate. I'm sorry, I'm sorry. My point is that would have had to be explained too and you put that as part of the prejudice analysis. Maybe there was a reason why counsel didn't rely on those e-mails because it may have opened the door to some stuff that wouldn't have been helpful for your client. Is that possible? It is possible, but then again you have to look at the absolutely damaging context of these e-mails. All right, we have your argument. You've reserved some time for rebuttal. We'll hear from the secretary. Thank you. Mr. Pallas. Thank you, Your Honor. May it please the court. My name is Richard Pallas. I represent Appellees, the Secretary, Florida Attorney General in the state of Florida. This is a case about whether Strickland was unreasonably applied, but this entire inquiry into Strickland ends at deficient performance prong. If this court, of course, answers its question that is posed to the parties as that, yes, this was a determination of state law and that this court would not second guess that particular determination. You didn't really bring that up in your brief, did you? That is correct, Your Honor. We did not. Why not? Your Honor, I did not draft the brief myself, but looking at how we drafted this brief, it appears that we kept this more as a general relying on the double deference standard that we typically bring up in our briefs. This would be part of double deference. In other words, deferring to state court determinations of state law fits clearly within that. I'm having trouble understanding how the state, when there's a determination of state law on a state evidentiary issue, is not raising the fact that it's not for us to be able to second guess the state court's determination of that evidentiary issue. Yes, Your Honor. Of course, this is something that we certainly should have had at the very beginning of our deficient performance prong analysis. We can't consider that point, the point that was raised by the question. We asked the question because we want to know the answer to it, but we also have to answer whether that's something we can even get to because it's really not raised as an issue in the government's response brief. No, Your Honor. I believe that while, of course, this would have been better for the state to bring up in its brief itself, I want to opine that the state is not the one with the burden here to show error below. That is on the defendant himself. We could have raised 100 reasons as to why this should have certainly been, why this should be affirmed. While it would have been better to discuss this exact state ruling ourselves in our initial brief, I certainly agree, Your Honor. But at least relying on saying we had no prejudice here, saying we had no deficient performance here, I believe we haven't necessarily waived this issue. Although if we had, I still believe that behind the double-deference standard that we have, given that was there any reasonable strategic reason that counsel would not bring in these emails, we would still prevail under that standard as well, Your Honor. Let me ask you this. We could not affirm based on the deficient performance prong of Strickland in this case, could we? I mean, you got an email where a witness lied, says she will lie, and the lawyer doesn't use it? I mean, I'm trying to figure out how we could say that's not deficient performance by a lawyer. He's got an email with a witness who says, I will lie, and he doesn't use that email to impute your credibility. Yes, Your Honor. I can see how in that context you may say that this doesn't lead to deficient performance, but deficient performance can be excused when we actually have a strategic decision as why not to bring in this email saying, I don't think I would not lie on you. What's the strategic decision? We don't know what it is without an evidentiary hearing. There was no evidentiary hearing here. Yes, Your Honor. We did not have an evidentiary hearing on this case, so we, of course, can't sit here at that. But at least going into like Harrington v. Richter as a case discussing, you know, whether there's a reasonable argument that counsel satisfied Strickland's deferential standard. Going back to double deference, Your Honor, I think that we begin to pose, well, why would counsel have done this? And I can pose, as this court obviously discussed in its prejudice analysis earlier, that this email could go both ways. I'm not talking about deficient performance. It just seems like gross incompetence for a lawyer to have an email by a witness who says she will lie and not cross-examine about that email, especially when you have another email that says, the witness says, what I hope and pray is that it's not Tyler, her son, who committed this crime. Well, Your Honor, I agree that had that been the sole context of these emails, I could see how one would conclude this being gross incompetence. But I think we go back to this being a reasonable strategic decision if we think about what this would do in the context of the prosecution. Here we obviously had evidence of, I should say, putting bricks in the road, showing a consciousness of guilt, that the defendant on the morning of the CPT interview showed up, told the victim here as well as the alleged victim. That's a prejudice argument, and that's what Judge Wilson is saying. Forget prejudice for right now. You may be 100 percent right on prejudice. But please answer his question regarding deficiency. Why is it not deficient for counsel not to impeach a witness based on bias where the witness says, I am going to lie or I will lie if this circumstance happens, and I suspect that maybe there is someone else who committed this horrible crime against my daughter? Yes, Your Honor, I understand that. I appear to be focusing more on prejudice here. But again, if this court believes that that email just sits directly on prejudice itself, I understand. But I still think that if I'm counsel, I don't want to create another showing of consciousness of guilt. Isn't your best answer really that even if it is deficient, there is no showing of prejudice? That is correct, Your Honor. Of course, even if I lose – You did preserve that. That was in your answer brief. That is correct, Your Honor. We did state that we did have prejudice here. So even if I'm incorrect on my deficient performance analysis, and I do not mean to give you a runaround on that particular prong, but it's still my opinion here respectfully that upon thinking about, yes, in the prejudice context, we have the defendant offering to buy gifts, telling the victims that he did not do this. If that email comes in, that email was sent based on what is attached to the 3050 motion. The issue with the deficient performance is that because we don't have an evidentiary ruling, we don't know why the strategic decision was made. All we have is the trial court asking the defendant if they had – if he wanted to introduce any further evidence in his defense, and the answer was no. But we don't have a sidebar. We don't have any other information as to why. That is correct, Your Honor. We have nothing from the defendant or trial counsel himself saying why he's not bringing this in. We have him asking why the – what the email address of AR was. And then we, of course, have the defendant's testimony during the colloquy with the judge near the end of the presentation of evidence, saying I have nothing that I want to present without testifying to give full context of what he stated. But again, I'm posing this respectfully based on the double-deference standards at least articulated in Harrington v. Richter, which is that I think if I am counsel, I may not want to say the mother of the victim warned me that they have told law enforcement that my daughter was touched, and now I am going to see the daughter the next morning saying I did not do this and offering to buy gifts. I understand why Your Honors consider this in the prejudice analysis, and I wholeheartedly agree. It's incredibly relevant to the prejudice analysis, and there's no reason to go any further in this case. But I still think that based on whether there's any reasonable argument that the Strickland standard was satisfied, this is me just posing as a hypothetical, but I understand that we did not have an evidentiary hearing to hear exactly what counsel said. This is just me trying to come up with reasons of which I've at least seen in opinions. No, but that's the problem is there's a difference between the opinions where there was an evidentiary hearing where counsel said this was the reason I didn't do something. For example, here, I didn't bring this up because I saw the email address, and I was really worried this would make my client look worse, especially where he wasn't going to testify. So why make him look bad when all we've done is focus on the victim and why she was lying in this case? I can understand that, but we don't have any evidence of that. What I'd like to ask about is I'd like to get to the prejudice part of this. Yes, Your Honor. So your opposing counsel says that really all we have, if we sort of rub it down to its essence here, all we have is a he said, she said. And here you have some statements even by the victim herself that, you know, that she's made false statements. In fact, she admitted to making false statements in the past when she spoke to the CPT interviewer. So why is this not a really close case for which this impeachment could have tipped the scales in favor of the defendant? Yes, Your Honor. I don't believe that this is a close case. Again, as this court has stated, we have the statements from M. We have the defendant's consciousness of guilt, evidence of showing up the next day, offering to buy. I'm sorry. Offering to buy clothing. And of course, the defendant, in conjunction with that, stating I did not do this to them. And if we consider that these emails come in saying that this was deficient, we know that he was told the morning before the CPT interview that there was an investigation happening at this point. But I believe that that statement of I only lie when people tell me to. That's out of context, Your Honor. That occurred on redirect examination after there was some statements about her stating when she does lie or not during cross examination. And specifically there they have asked, are you sure that this is the defendant, Mr. Gaffney? She states, yes, I saw his face. They said, sometimes you've lied about things. What do you lie about? I say I lie about she goes back when one of her siblings does her homework. She tells me not to tell her. I only lie when people tell me to lie. I think in the full context, there's a big difference between I'm lying so that someone gets sent home or so that someone's not going to get sent to bed without their dessert because they didn't do their homework. And I lie to someone to prison day for day as a prison release. He reoffended. I don't believe that that statement can be viewed in this vacuum here. Her ability to tell the truth was qualified at the beginning of her testimony. Speaking of why she knows the truth is a truth, why she knows the lies, the lie, the marker illustrations that were given. So I don't believe that this is as close to the case as the defendant poses it. There's some other evidence that that you're you omitted in your discussion here. It seems to me that while B was certainly discredited, B did say that that the defendant here did molest her as well. And yes, there was cross examination and she ultimately backed off on that. And J.O.A. was issued on her counts. But certainly the testimony can be considered as as prior bad act evidence under Florida law, which is very expansive in sex bad cases as affirmative evidence that this happened. Under Section 404, that's correct, sir, that it could be brought in as prior bad act evidence. And you also have the brother who also talked about not just that she was told this, but that he saw the defendant watching sheets at a particular time, which was very unusual. He confirmed that he slept in the bedroom. You had the brother also confirm these things, correct? That is correct, Your Honor. I was more just focusing on the context of the lie just for a prejudice purpose. But I agree that all that also factors into this prejudice context. And I think it's important that the first reporter here was the brother. And all this talk about in the initial brief of juvenile. There were also physical evidence that she had, in fact, been molested. Wasn't there sort of redness and wasn't there behavioral changes? They were sort of like the telltale signs of someone who was going through some sort of traumatic thing. That is correct, Your Honor, as well as stating that her stomach hurts, that discharge, other unfortunate things to talk about. My apologies. In other words, not but but you're the reason we're bringing this up is because your opposing counsel said that, well, there could have been evidence that this didn't happen. There was really no dispute that this happened. The only question is whether it was the defendant or somebody else. Right. That is correct. Your Honor, as as argued an opening statement saying by the defense counsel stating this may have happened, but it did not happen with my client. You know, the doors were locked. There's there's pause as to whether he was even home during any of this and sleeping there. But as you've said, M had testified that he saw him in the bedroom and saw him washing the sheets the next day. But in. This court doesn't mind one moment. But just to go real quick on the state law question, if I may backtrack real quickly, is. The defendant continues to talk about this bias and motive impeachment, and understandably so. That is different from inconsistent statements. I certainly know what the Florida District Courts of Appeal have said on that matter. I've read rule 908 or I'm sorry, 608. And of course, I've seen what Professor Earhart has said on that matter. But he's he still cannot get in without being authenticated. And I believe that that would have been a state law ruling by the trial court in denying this, because under our 3850 procedure for these, you receive an evidentiary hearing. If your claim is facially sufficient, you've alleged deficient performance as well as prejudice. It's not refuted by the record, although our post conviction state court here did find it was partially refuted by the record, at least in the colloquy between them. But also, it must succeed as a matter of law. If this is something that would not be admissible, of course, they are. Our court may rule as such and say, because this wouldn't come in, you cannot be you cannot perform deficiently if you make a meritless objection or a meritless motion. And I believe that is something we could have had here. But if there are no other questions from this panel, I'll rely on the state's briefs and my answers to the question today. And I ask that you affirm. Thank you, Mr. Pallas. Thank you, Your Honors. And Mr. DeRusher, you've reserved some time for rebuttal. I believe this court has hit the nail on the head. We need an evidentiary hearing, because right now we're speculating as to prejudice. We're speculating as to why trial counsel may or may not have done something. We're even speculating as to what G-Man on top of you actually means. We don't know that. We need an evidentiary hearing. We're also, even the trial court was speculating as to the authentication of the email issue. Because if you think about it, if we were to cite this as precedent, how could it be overcome? They're saying, oh, it couldn't be authenticated. It's a legal issue. Authentication is a legal issue, isn't it? It is, but it's just a matter of, the trial court may have got the law wrong, but it was a legal call. But it's also an if-then proposition that the court made. And it was just simply suggesting, if she didn't do this, then they think it couldn't be authenticated, based on what they had. But what they had was his handwritten 3850 motion. He wasn't required to issue a subpoena ducis tecum for hearing to Yahoo. Oh, by the way, he couldn't. There was no hearing. If we get to prejudice, though, we don't really have evidentiary hearings on prejudice. What we do is just evaluate the state of the evidence in the light most favorable to you. So having these been admitted, having the witness be impeached here based on bias, so having all that in, would there be a reasonable probability of a different result? That's a legal call for us. And I guess I'm where Judge Wilson is at, which is I'm having a hard time seeing, given the total state of the evidence here, how even if this impeachment was in, and even with some, I think, the negative connotation with the e-mail for your client, that the result would have been, there's a reasonable probability of a different result here. And the difficulty is that we really don't know. He's never been given an evidentiary hearing. This has all been done on conjecture and surmise. And that's really... But we always do that for prejudice. In other words, the entire prejudice inquiry is us speculating about what the jury will do. That's the nature of the inquiry. In a sense, yes. But in this sense... If you don't bring the jury back at an evidentiary hearing and say, here's the evidence that would have come in, what would you have done? Oh, I understand that. But at the same token, this is based on a summary denial. As the court pointed out in the Apple East section, we don't have the benefit of an evidentiary hearing saying that the attorney said, well, I didn't do this because of that. And, well, we went over here and determined da-da-da-da-da. We don't have that. All we have is a summary denial of a 3850 without an evidentiary hearing. And at that point, we have to basically conclusively establish that there would have been no prejudice. And as Judge Wilson aptly pointed out, and what struck me the hardest, who in the world doesn't try to bring this evidence in if you're defense counsel? Who in the world doesn't try to do that? Because this is such damning evidence. It really is. And when you've got somebody who's facing a charge like this, in this kind of a context, don't you try to bring in just about anything you can to try and exonerate him? Don't you try to do that? Yeah, that relates to the deficient performance prong and not the prejudice prong. But I think we have your argument, counsel. Thank you. Thank you. And, Mr. DeRocher, I see you were appointed by the court to represent Mr. Gaffney, and the court thanks you for your service. My pleasure.